**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

GENENDER INTERNATIONAL, INC.,       )
                                    )
            Plaintiff,              )
                                    )
      v.                            )        No. 07 C 5993
                                    )
SKAGEN DESIGNS, LTD.,               )
                                    )
            Defendant.              )


<u>MEMORANDUM OPINION</u>

Before the court is Skagen Designs, Ltd.'s ("Skagen") motion to dismiss Genender International, Inc.'s ("Genender") complaint pursuant to Fed. R. Civ. P. 12(b)(3) and 12(b)(6).  For the reasons explained below, Skagen's motion is granted in part and denied in part.

<u>BACKGROUND</u>

Both Skagen (a Nevada corporation) and Genender (an Illinois corporation) are in the business of designing and manufacturing watches.  (Compl. for Decl. J. of Patent and Trade Dress Non-Infringement and Invalidity, and Related Causes (hereinafter, "Pl. Compl."), at ¶¶ 2-3.)  Skagen contends that, on June 1, 2007, it learned that Genender was selling watches confusingly similar to its own at a Las Vegas trade show.  (Mem. in Supp. of Def. Skagen Designs, Ltd.'s Mot. to Dismiss Pl. Genender Int'l, Inc.'s Compl. (hereinafter, "Def. Mem.").)  That same day, Skagen hand delivered

a detailed cease-and-desist letter to Genender claiming that
certain Genender watches infringed Skagen's protected trade dress
and its U.S. Design Patent No. D515,947 (the "'947 Patent").
(Id.) "[L]iability for infringement of intellectual property,"
Skagen warned, "can be significant." (See Letter of Bob Rowen,
dated June 1, 2007, attached as Ex. A to Pl. Compl.). Genender
vigorously denied Skagen's claims, point-by-point, in a letter
dated June 22, 2007. (See Letter of Robert Faber, dated June 22,
2007, attached as Ex. A-2 to Def. Mem.) Genender's letter
concluded, "[w]e trust this now lays this matter to rest." (Id.)

In what Skagen insists on referring to as a "settlement
letter," Skagen reasserted its infringement claims and demanded,
"in order to avoid litigation," that Genender: (1) acknowledge
Skagen's intellectual property rights, and (2) discontinue
producing and manufacturing certain offending products. (See
Letter of Robert Rowen, dated June 29, 2007, attached as Ex. A-3 to
Def. Mem.) In response, Genender again denied violating Skagen's
intellectual-property rights — and specifically rejected Skagen's
demands — but did strike a somewhat more conciliatory tone. (See
Letter of Robert Faber, dated July 12, 2007, attached as Ex. A-4 to
Def. Mem. ("[W]e would welcome any opportunity to further discuss
this matter to achieve an amicable resolution.").) This exchange
apparently led to more formal settlement negotiations in July and

August 2007 (<u>see</u> Rowen Decl., attached as Ex. B to Def. Mem., at ¶ 7), but no agreement.

On September 26, 2007, Skagen sent Genender another cease-and-desist letter, this time copying the general counsel of one of Genender's customers, Sears Holding Corporation. (<u>See</u> Letter of Robert Faber, dated Sept. 26, 2007, attached as Ex. A-5 to Def. Mem. ("I am copying the General Counsel of Sears with this letter so that they have knowledge of our position.").) Skagen sent another letter on October 5, 2007 demanding that Genender discontinue its "Hamlin" line of watches. (<u>See</u> Letter of Robert Faber, dated Oct. 5, 2007, attached as Ex. A-6 to Def. Mem.) The similarities to Skagen's watches were, according to Skagen, too fundamental to be resolved by modifying particular design elements. (<u>Id.</u>) If Genender did not comply with Skagen's demands by November 1, 2007, Skagen threatened to "press [its] claims, including against any retailer carrying this line." (<u>Id.</u>) Genender filed this declaratory-judgment action approximately two-weeks later, on October 23, 2007. Genender requests declarations of non-infringement (Count I) and invalidity (Count II) as to the '947 Patent, and comparable declarations as to Skagen's alleged trade-dress rights (Counts III and IV). Genender also claims that Skagen tortiously interfered with Genender's longstanding business relationship with Sears (Count V). Skagen, which was not yet aware that this lawsuit had been filed (<u>see</u> Rowen Decl. ¶ 11), sued

Genender for patent and trade-dress infringement on October 24, 2007 in the United States District Court for the District of Nevada. Both this case and the Nevada action are in the early stages of litigation.

## DISCUSSION

### A.   Whether Genender's Declaratory-Judgment Complaint is Proper

Skagen contends that Genender filed this lawsuit in an improper "race to the courthouse" to secure its preferred venue. We have discretion under 28 U.S.C. § 2201 to decline to exercise jurisdiction over a declaratory-judgment complaint. See id. ("In a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, *may* declare the rights and other legal relations of any interested party seeking such declaration . . . .") (emphasis added). Under our Court of Appeals' decision in Tempco Elec. Heater Corp. v. Omega Eng., Inc., 819 F.2d 746, 749-750 (7th Cir. 1987), a declaratory-judgment complaint filed in anticipation of an infringement suit should give way to the later filed action. Skagen cites cases from this district applying Tempco and dismissing the first-filed complaint. See, e.g., Fed. Signal Corp. v. Public Safety Equip., Inc., 91 C 0493, 1991 U.S. Dist. LEXIS 9437, *4-12 (N.D. Ill. July 10, 1991). But the Federal Circuit Court of Appeals — not the Seventh Circuit — will have exclusive appellate authority over a final judgment in this case. See 28

U.S.C. § 1338(a) ("The district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to patents, plant variety protection, copyrights and trademarks."); 28 U.S.C. § 1295(a)(1) (Granting the Federal Circuit exclusive appellate jurisdiction over final decisions of a district court when the that court's jurisdiction is "based, in whole or in part, on section 1338 of this title."). That court has explicitly rejected Tempco Electric in patent cases. Genentech, Inc. v. Eli Lilly and Co., 998 F.2d 931, 937 (Fed. Cir. 1993) (abrogated on other grounds by Wilton v. Seven Falls Co., 515 U.S. 277 (1995)) (Declining to defer to regional circuit law and specifically "declin[ing] to apply Tempco Electric to patent cases."). Under the Federal Circuit's standard, the defendant must articulate a "sound reason that would make it unjust or inefficient to continue the first-filed action." Id. at 938. The fact that the declaratory-judgment complaint is "anticipatory" is just one factor, Serco Serv. Co., L.P. v. Kelley Co., Inc., 51 F.3d 1037, 1040 (Fed. Cir. 1995), and by itself does not justify dismissal. Elec. for Imaging, Inc. v. Coyle, 394 F.3d 1341, 1348 (Fed. Cir. 2005). Skagen points out that the Genentech court did not indicate whether it would apply its own or the regional-circuit's standard to non-patent claims in a patent case. Cf. Thompson v. Haynes, 305 F.3d 1369, 1374 (Fed. Cir. 2002) ("In deciding non-patent issues, such as trademark, trade dress and other unfair competition issues

under § 43(a) of the Lanham Act, this Court applies regional circuit law."). But it would make little sense to decline to exercise jurisdiction over related claims between the same parties if the declaratory-judgment action is going to go forward. As the Genentech court observed, "[t]he purpose of prevent[ing] multiplicity of actions and to achieve resolution in a single lawsuit of all disputes arising out of common matters . . . is as valid for declaratory action as any other." See Genentech, 394 F.2d at 938 (internal citation and quotation marks omitted). In this, the Federal Circuit and the Seventh Circuit agree: the parties' dispute ought to be adjudicated in one lawsuit. If Federal Circuit authority dictates exercising jurisdiction over Counts I (noninfringement) and II (invalidity) of Genender's complaint, then judicial economy dictates that we also exercise jurisdiction over Genender's trade-dress claims.

Skagen argues that it has articulated "sound reasons" to dismiss Genender's complaint. (Def. Skagen Designs, Ltd.'s Reply Brief in Supp. of its Mot. to Dismiss Pl. Genender Int'l, Inc.'s Compl. (hereinafter, "Def. Reply"), at 3-5.) We disagree. Sound reasons for dismissing the first-filed action include "the convenience and availability of witnesses, or absence of jurisdiction over all necessary or desirable parties, or the possibility of consolidation with related litigation, or considerations relating to the real party in interest." Genentech,

998 F.3d at 938. Skagen concedes that this court has jurisdiction over all "necessary or desirable parties," and that Illinois and Nevada are equally convenient (or inconvenient) for any potential witnesses. (Def. Mem. at 7-8.) Indeed, Skagen's counsel conceded that "[i]t doesn't make much difference" whether the case is tried in Illinois or Nevada. See Trans. of Proceedings, dated Dec. 21, 2007, attached as Ex. F to Decl. of Art C. Cody; cf. Trading Tech. Int'l, Inc. v. CQG, Inc., No. 5 C 4811, 2005 U.S. Dist. LEXIS 26514, *9-14 (N.D. Ill. Oct. 31, 2005) (Concluding that it would be more convenient and efficient to litigate in the forum where the second lawsuit was filed.).[1] Notwithstanding this concession, Skagen argues that as the "natural plaintiff" its preference to litigate in Nevada is a "strong factor favoring dismissal." (Def. Reply at 6.) That is not the law in the Federal Circuit; in fact, it turns Genentech on its head. See Genentech, 998 F.2d at 937 ("The general rule favors the forum of the first-filed action, *whether or not it is a declaratory action*.") (emphasis added). Skagen also claims that it was caught flat-footed in the race to the courthouse because Genender disingenuously held out the prospect of settlement. Although settlement negotiations are a relevant factor, they do not prohibit a party from seeking

---

[1]/ The Genentech court also indicated that dismissal may be appropriate if forum shopping "was the only motive for the filing." Genentech, 998 F.2d at 931. While both parties have chosen their home forum, both forums have a nexus with the dispute. The only basis for accusing Genender of forum shopping is the allegedly "anticipatory" nature of the lawsuit, and that is insufficient (by itself) to justify dismissal. Elec. for Imaging, 394 F.3d at 1348.

declaratory relief.  <u>See</u> <u>Elec. for Imaging</u>, 394 F.3d at 1344 (The parties met to discuss settlement before the plaintiff filed its declaratory-judgment complaint.).  Genender filed this action only after Skagen contacted Sears and threatened to contact Genender's other customers.  Under the circumstances, Genender was "entitled under the Declaratory Judgment Act to seek a timely resolution of [Skagen's] threats of litigation and remove itself from the shadow of threatened infringement litigation."  <u>Id.</u> at 1347 (citation and internal quotation marks omitted).  Skagen's unilateral deadline to settle by November 1, 2007 did not deprive Genender of that right.  <u>See</u> <u>id.</u> ("The fact that Coyle had stated a deadline for negotiations to be concluded, and that that deadline had not passed when EFI brought suit, does not deprive EFI of the right to sue.");  <u>cf.</u> <u>Trading Tech.</u>, 2005 U.S. Dist. LEXIS 26514, *3-4 (The parties mutually agreed to a "negotiation schedule," which the defendant violated by filing its declaratory-judgment action.).  Moreover, that deadline was illusory.  Skagen filed the Nevada lawsuit on October 24, 2007, a week before the purported deadline and before learning that Genender had filed this action.  (Def. Mem. at 4-5.)  Notwithstanding its earlier representations, Skagen evidently felt free to sue (or not sue) whenever it pleased.  Genender was justified in acting promptly to remove the cloud that was hanging

over its business.  Applying <u>Genentech</u> and its progeny, we conclude that this action should proceed.[2]

## B.  **Skagen's Motion to Dismiss Genender's Tortious-Interference Claim**

Skagen has also moved to dismiss Genender's tortious interference claim (Count V) pursuant to Rule 12(b)(6).  The purpose of a 12(b)(6) motion to dismiss is to test the sufficiency of the complaint, not to resolve the case on the merits.  5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356, at 354 (3d ed. 2004).  When evaluating such a motion, the court must accept as true all factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor.  <u>Hentosh v. Herman M. Finch Univ. of Health Sciences</u>, 167 F.3d 1170, 1173 (7th Cir. 1999); <u>Jang v. A.M. Miller & Assocs.</u>, 122 F.3d 480, 483 (7th Cir. 1997).  However, the "allegations must plausibly suggest that the plaintiff has a right to relief, raising that possibility above a 'speculative level.'"  <u>EEOC v. Concentra Health Serv., Inc.</u>, 496 F.3d 773, 776-77 (7th Cir. 2007) (quoting <u>Bell Atlantic Corp. v. Twombly</u>, — U.S. —, 127 S.Ct. 1955, 1964, 167 L.Ed.2d 929 (2007)).  Our Court of Appeals has cautioned courts and litigants against "overread[ing]" <u>Bell Atlantic</u>, <u>see</u> <u>Limestone Dev.</u>

---

[2]  When the parties were before the court on Skagen's motion to dismiss, Genender's counsel indicated that the parties had agreed that we would decide which of the two courts (Illinois or Nevada) would adjudicate the parties' dispute.  Skagen's counsel, without expressly committing to that procedure, indicated that "it certainly seems reasonable." (Trans. of Proceedings, attached as Ex. F to Decl. of Art. C. Cody, at 8.)  Accordingly, we anticipate that the parties will cooperate to have the Nevada action transferred to this court.

Corp. v. Village of Lemont, Ill., — F.3d —, 2008 WL 852586, *5 (7th Cir. Apr. 1, 2008), and the Supreme Court has since dispelled the notion that it had abandoned notice pleading. See Erikson v. Pardus, 127 S.Ct. 2197 (2007). So, "heightened fact pleading of specifics" is still not required. Killingsworth v. HSBC Bank Nevada, 507 F.3d 614, 618 (7th Cir. 2007) (citation and internal quotation marks omitted). Nevertheless, the complaint must "contain enough facts to state a claim to relief that is plausible on its face." Id.

The elements of tortious interference with prospective economic advantage are: "1) the plaintiff's reasonable expectation of entering into a valid business relationship; 2) the defendant's knowledge of the plaintiff's expectancy; 3) purposeful interference by the defendant that prevents the plaintiff's legitimate expectancy from being fulfilled; and 4) damages to the plaintiff resulting from the defendant's interference." Delloma v. Consolidation Coal Co., 996 F.2d 168, 171 (7th Cir. 1993). Skagen challenges whether there are "enough facts" in the complaint (taken as true) to support the allegation that Genender's relationship with Sears has been "impair[ed]" (Pl. Compl. ¶ 14) by Skagen's letter. Cf. Limestone Dev., — F.3d —, 2008 WL 852586, at *5 ("Threadbare is the word for the allegation that the article in the *Village News* injured Limestone and is therefore actionable."). In support of its claim, Genender cites an email that it received from

a Sears representative asking Genender to provide a written response to Skagen's accusations. (<u>See</u> Email of Jennifer McWilliam, dated Oct. 10, 2007, attached as ex. O to Pl. Compl. ("I need in writing what your response is to Skagen regarding the infringement accusation please.").) This is insufficient, by itself, to raise the possibility of relief above a "speculative level" — for all we know Sears is satisfied with Genender's response. Genender also alleges that its "reputation" with Sears has been damaged, and then goes on to claim that it "*may* lose valuable business opportunities." (<u>See</u> Pl. Compl. ¶ 44 (emphasis added); <u>see also</u> <u>id.</u> at ¶ 42 (Alleging that Skagen's infringement accusations "have resulted in having to deal with questions concerning infringement from Sears, and *potential* loss of business from Sears.") (emphasis added).) We understand these allegations to mean that Sears continues to do business with Genender, but may at some point curtail or terminate their relationship due to Skagen's infringement allegations. <u>Cf.</u> <u>Delloma</u>, 996 F.2d at 171 (Plaintiff must allege "purposeful interference by the defendant *that prevents the plaintiff's legitimate expectancy from being fulfilled*.") (emphasis added); <u>United Labs., Inc. v. Savaiano</u>, No. 06 C 1442, 2007 WL 4557095, *7 (N.D. Ill. Dec. 21, 2007) (Dismissing complaint where the plaintiff "only alleged the existence of potential damages at some future point in time."); <u>Int'l Serv. Assoc., Inc. v. Arco Mgmt. of Wash. D.C., Inc.</u>, No. 94

C 1807, 1994 WL 583302, *7 (N.D. Ill. Oct. 21, 1994) (The elements of tortious interference "do not permit recovery for those acts of interference that one might argue would cause damage or might cause damage."); <u>Poth v. Paschen Contr. Inc.</u>, No. 85 C 8499, 1986 WL 15081, *5 (N.D. Ill. Dec. 18, 1986) ("The allegations that Paschen lost key employees and incurred injury to its business reputation do not support a claim that Paschen lost legitimate expectancies of valid business relationships with other firms in the construction industry."). Genender's allegations are insufficient to state a claim for tortious interference, as neither the facts nor the conclusions alleged in the complaint indicate that Genender has lost a legitimate expectancy.

Genender argues that our decision in <u>Republic Tobacco, L.P. v. N. Atlantic Trading Co.</u>, No. 98 C 4011, 1999 WL 261712 (N.D. Ill. 1999) requires a different result. In <u>Republic Tobacco</u>, we held that Illinois law did not require a plaintiff to plead a "complete termination of the entire business relationship between plaintiff and a third party" to state a claim for tortious interference. <u>Id.</u> at *6. While this is a correct statement of the law, it does not aid Genender in this case. Republic alleged that North Atlantic "wrongfully induced Republic's customers to end or diminish certain business relationships with Republic, leading to lost sales." <u>Id.</u> Specifically, Republic claimed that particular customers "stopped participating in its incentive programs and that one customer told

Republic that it did not anticipate further purchases of a certain brand of Republic cigarette papers." <u>Id.</u> This is a far cry from Genender's claim that the intangible consequences of Skagen's letter may one day ripen into actual harm. Count V of Genender's complaint is dismissed without prejudice. Genender may amend its complaint if it believes that it can, in good faith, state a plausible, non-speculative claim to relief.

<u>**CONCLUSION**</u>

Defendant's Motion to Dismiss Plaintiff Genender International, Inc.'s Complaint (17) is denied in part and granted in part. A status hearing is set for April 23, 2008 at 11:00 a.m.

DATE:     April 14, 2008

ENTER:    _____

John F. Grady, United States District Judge