UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| GENENDER INTERNATIONAL INC. | ) | |
| | ) | No. 07 C 5993 |
| Plaintiff, | ) | |
| | ) | Judge John F. Grady |
| v. | ) | |
| | ) | Magistrate Susan E. Cox |
| SKAGEN DESIGNS, LTD. | ) | |
| | ) | |
| Defendant. | ) | |

**FIRST AMENDED COMPLAINT FOR DECLARATORY
JUDGMENT OF PATENT AND TRADE DRESS NON-INFRINGEMENT
AND INVALIDITY, AND RELATED CAUSES**

Plaintiff, Genender International, Inc. ("GII" or "Plaintiff") through its counsel and for its

Amended Complaint against Defendant Skagen Designs, Ltd. ("Skagen" or "Defendant") states

as follows:

1.       This is an action for a Declaratory Judgment of Patent and Trade Dress Non-

Infringement and Invalidity under the Declaratory Judgment Act, and related causes.

**THE PARTIES**

2.       GII is an Illinois Corporation with its principal place of business at 44 Century

Drive, Wheeling, IL  60090 in this District.  GII is engaged in the business of designing and

manufacturing watches, and sells its products throughout the United States, including in this

District.

3.       Skagen is a Nevada Corporation with its principal place of business at 640

Maestro Drive, Suite 100, Reno, NV  89511.  Skagen is engaged in the business of designing and

manufacturing watches, and sells its products throughout the United States, including in this

District.

## JURISDICTION AND VENUE

4.      This action arises under the patent and trademark laws of the United States and seeks relief, *inter alia*, under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.  This Court has jurisdiction under 28 U.S.C. § 1338(a).  Venue is proper in this judicial district under 28 U.S.C. §§1391(c) and 1400(b).

5.      Upon information and belief, Skagen is subject to this Court's personal jurisdiction because it does and has done substantial business in this State and in this District, including, but not limited to: (1) selling goods and/or services within this State and in this District; and (2) regularly doing or soliciting business, engaging in other persistent courses of conduct, and/or deriving substantial revenue from goods used or consumed by, and services provided to, individuals in this State and in this District and/or because Defendant has committed tortious acts in this District and/or tortious acts outside this District which has affected GII in this District.

## FACTS RELATING TO THE CHARGES OF INFRINGEMENT

6.      By letters dated June 1, June 29, and October 5, 2007 ("the Skagen Letters") (attached hereto as Exhibits A, B and C), Skagen has accused GII's HAMLIN line of watches (the "Accused Products") of infringing Skagen's U.S. Patent No. D515, 947 ("the '947 Patent" or "the Patent-in-Suit")(Attached hereto as Exhibit D), and its alleged trade dress rights in Skagen's so called "Skagen look" (the "Alleged Trade Dress").  Examples of the Alleged Trade Dress are attached hereto as Exhibits E-K. GII has responded to those charges via June 22 and July 12, 2007 letters ("the GII Letters").  The GII Letters are attached hereto as Exhibits L and M.

**The Legal Standard**

7.     To establish infringement of a design patent, the patentee must prove both substantial similarity and the appropriation of the points of novelty.  For trade dress infringement, the owner of the alleged trade dress must show that the trade dress has acquired distinctiveness and secondary meaning, i.e., the trade dress functions as a trademark of the manufacturer, the alleged trade dress is not functional or merely ornamental, and that the accused products are confusingly similar to the alleged trade dress.

**The Infringement Allegations**

8.     Skagen, via the Skagen letters, has asserted that GII's HAMLIN line of watches infringes the '947 Patent, in particular citing alleged similarities between the design patented in the '947 Patent and the HAMLIN "Block Watch" model, characterizing the similarities between the design patent as represented by Skagen Model 380, and the "Block Watch" as "striking." Exhibit B at 1; see also Exhibits A and C.  Plaintiff has applied page numbers to the Skagen Letters for the convenience of the Court and the parties.

9.     Skagen alleges that such similarities include the shape, simplicity of the presentation, relatively thin edges of the case, sloping back to present a thin profile, the chrome border around the inner dial, and two level dial. Exhibit B at 1.

10.     With respect to trade dress infringement, Skagen's claim focuses not on individual trade dress elements of Skagen and the HAMLIN watch line but rather on "the overall look" of the accused watches and asserts that that "look" compared to the Skagen Look would result in consumer confusion.  See Ex. B at 2-3.  Skagen loosely identifies the Skagen Look as including "case shapes used by Skagen, two-level dials, and the simple design elements of

Skagen indicators, hands and other components." See Ex. B at 5.    According to Skagen, these design elements include:

> a. a simple and clean presentation
> b. a thin and sleek presentation, including tapered sides
> c. simple indicators using a clean typeface
> d. simple hands
> e. repetition of the case shape on the face, through inset (two level dial) or otherwise
> f.  bands integrated with the case
> g. similar colors and materials on many dials, including mother of pearl and metallic blue (emphasis added).

Id. at 3.

11.    Recently during discovery in the present action, Skagen defined the aforementioned elements as "Integrated Band", "Two-Level Dial", "Ultrathin Profile", "Simple Indicators", and "Additional Indicia" and "Shared Elements".  Skagen further defines its trade dress in terms of the alleged similarities between Skagen's watches and the HAMLIN line, rather than defining a legally protectable trade dress.

12.    Skagen claims that its various designs have each attained secondary meaning and supports this proposition by asserting that they had shown a HAMLIN brochure to "a number of individuals" who remarked that the watches presented the "Skagen look."  Id.  Skagen has not sought or obtained either design patent or trademark registration for any watches having the so-called Skagen Look, except the '947 Patent on one watch.

13.    Skagen has demanded that "in order to avoid a lawsuit" GII must discontinue production of its "Block Watch" and any product that conveys the Skagen Look. Id. at 5.  In its final October 5 letter, Skagen concludes that the similarities between GII's HAMLIN products and Skagen's products and design patent are so great as to imply deliberate copying.  Exhibit C at 1. Skagen then demands that no later than November 1, 2007, GII must 1) cease production of

HAMLIN watches; and 2) remove such watches from stores. Should GII fail to do so, Skagen threatens it "will have no alternative but to press [its] claims" against not only GII but also GII's customers.  Id. at 1-2.

**GII'S Response**

14.     GII responded to Skagen's patent infringement allegations, via the GII Letters, by explaining that accused GII watches do not possess the required "substantial similarity" to the '947 Patent and that whatever similarities that are shared between the two watches are attributable to "old, non-protectable features."  Exhibit L at 2-5; Exhibit M at 7-10.  In support of the differences between the '947 Patent and the accused GII watches, GII was recently awarded United States Design Patent No. D566, 582 for the ornamental design claimed by that patent.

15.     GII has pointed out numerous differences between the accused HAMLIN Block Watch and the Patent-in-Suit to include: the HAMLIN Block Watch has a rectangular shaped case, while the '947 patent is square shaped; and the HAMLIN watch has a wide flange on the top and bottom ends of the watch case to which the strap is attached, while the '947 patent does not have this feature.  Exhibit L at 2.

16.     GII has further provided a figure-by-figure analysis of the '947 Patent claims along with a detailed explanation of those differences.  For example, the overall shape of the watch portrayed in Figures 1, 4, and 6 of the '947 Patent omits the extended, flared-out positions on the top and bottom of the HAMLIN Block Watch.  Similarly, straight and flat edges that wrap around the entire watch case shown in Figures 2, 3, and 5 of the patent are not present in the HAMLIN watches.  See Ex D; Ex. M at 2-6.

17.     GII also set forth that the HAMLIN Block Watch does not include any point of novelty of the '947 Patent design, the main feature of the '947 Patent being the square, round-

sided overall shape, an old shape. GII provided several examples of prior art third party watches incorporating the '947 Patent design. See Exhibit L at 2-4. Genender has also incorporated the '947 Patent design in its own prior art watch designs.

18.    GII has also set forth that the patented design does not include any novel ornamental feature noting that the thin edges of the case, sloping back to present a thin profile are functional, non-ornamental and common features that are not protectable and that Genender does not even employ these features as described. See Ex. M at 6.

19.    GII has addressed Skagen's Alleged Trade Dress infringement claims, emphasizing that GII's watch designs, as well as its dial branding, watch hands, hour indicators, packaging, slogans, brochures, hang tags, warranties, displays, dial markings, and case back markings all differentiate GII's watches from all other designs in the market. Ex. L at 8.

20.    GII has further illustrated that many third party watches incorporate elements of Skagen's Alleged Trade Dress. For example, the Kenneth Cole, George Olsen, Calvin Klein, Lorus by Seiko, Movado and Citizen collections each include watches that have a simple, thin and clean presentation with tapered sides, simple indicators with simple hands, repetition of the case shape on the face, bands integrated with the case and/or mother of pearl and metallic blue dials. See Ex. L at 9; Ex. M at 12-15.

21.    GII has also noted that many of the elements of "the Skagen look" are functional, citing elements essential to the use and purpose of the watch (e.g., double dials, hands, markers, thin case, integrated strap) and affecting the quality as well as cost of the watch (e.g., diamond markers, leather and metal straps). See Ex. M at 16.

22.    GII has also further explained that none of the Skagen watch designs constitute protectable trade dress because none of the designs is exclusive to Skagen, but are widely used

by others and are generic, and none has acquired, nor is any capable of acquiring, secondary meaning. See Attachment L at 7. GII provided many similar third party watch designs that were marketed prior to Skagen's adoption of its watches, and are still on the market. Id. at 8, Appendix A. GII has articulated that there are many watches that share the features that Skagen asserted as its trade dress and thus such Alleged Trade Dress protection would be invalid. Id.

## COUNT I
*(Declaratory Judgment Non-Infringement of U.S. D515,947)*

23.     GII hereby incorporates and re-alleges paragraphs 6-9 and 13-18 of the Complaint as though fully set forth herein.

24.     Skagen alleges that the '947 Patent is valid and that GII has infringed that patent.

25.     As set forth in paragraphs 6-9 and 13-18 above, and the exhibits referenced therein, GII contends that it does not make, use, or sell, and has not made, used, or sold in the United States any products that infringe the '947 Patent.

26.     By reason of the foregoing, an actual controversy exists between GII and Skagen as to infringement of the '947 Patent, and GII requests a declaration from the Court finding that GII's products do not infringe any of the '947 Patent.

## COUNT II
*(Declaratory Judgment Invalidity U.S. Patent No. D515,947)*

27.     GII hereby incorporates and re-alleges paragraphs paragraph 6-9 and 13-18 of the Complaint as though fully set forth herein.

28.     Skagen alleges that the '947 Patent is valid and that GII has infringed that Patent.

29.     GII, as set forth in paragraphs 6-9 and 13-18 and the Exhibits referenced therein, contends that the '947 Patent is invalid and/or unenforceable for failure to satisfy one or more of the requirements for patentability set forth in 35 U.S.C. §§ 102, 103, 112 and/or 171.

30.     By reason of the foregoing, an actual controversy exists between GII and Skagen as to the validity of the '947 Patent, and GII requests a declaration that the '947 Patent is invalid for failure to satisfy one or more of the conditions of patentability.

## COUNT III
(*Declaratory Judgment of Absence of Trade Dress*)

31.     This is a claim for declaratory judgment that Skagen's watch line lacks an Alleged Trade Dress that may be protectable.

32.     GII incorporates by reference paragraphs 6-7, 10-12 and 19-22 of this Complaint as if fully set forth herein.

33.     As set forth in paragraphs 6-7, 10-12 and 19-22 above and the attachments referenced therein, Skagen's Alleged Trade Dress is functional, generically used by others, and/or lacks secondary meaning and is not distinctive and is therefore invalid and/or unprotectable.

## COUNT IV
(*Declaratory Judgment of Trade Dress Non-Infringement*)

34.     This is a claim for declaratory judgment that GII has not committed any acts of Trade Dress infringement.

35.     GII incorporates by reference, paragraphs 6-7, 10-12 and 19-22 of this Complaint as if fully set forth herein.

36.     As set forth in paragraphs 6-7, 10-12 and 19-22 above and the attachments referenced therein, GII has not infringed Skagen's Alleged Trade Dress because GII's activities do not result in a likelihood of confusion or in any deception, dilution, tarnishment or other harm with respect to Skagen's Alleged Trade Dress.

## COUNT V
*(Tortious Interference With Existing and Potential Business Relationships)*

37. This is a claim for tortious interference with existing and potential business relationships of Plaintiff.

38. The allegations in paragraphs 6-22 are realleged and reincorporated by reference as if fully set for herein.

39. Upon information and belief, Skagen had been informed of and was aware of GII's longstanding commercial relationship with Sears Holding Corporation ("Sears"), Meijer Corporation ("Meijer") and Kohl's Corporation ("Kohl's") and prospective commercial relationships with retailer J.C. Penney Corporation, Inc. ("J.C. Penney").

40. On September 26, 2007, without notice to GII, Skagen provided a letter to legal counsel for Sears in which it informed Sears that Skagen accused GII's watches of infringing Skagen's Alleged Trade Dress and the '947 Patent. The September 26, 2007 letter is attached as Ex. N.

41. Upon information and belief, Skagen was aware that such accusations were objectively baseless, and that by communicating these accusations it intended to, and did, harm GII's business relationship with Sears.

42. Upon information and belief, Skagen similarly informed at least Kohl's and J.C. Penney that Skagen accused GII's watches of infringing Skagen's Alleged Trade Dress and the '947 Patent.

43. Upon information and belief, Skagen was aware that such accusations were objectively baseless, and that by communicating these accusations it intended to, and did, harm GII's business relationship with Kohl's and prospective relationship with J.C. Penney.

44.     On October 3, 2007, GII received an e-mail from Ms. Jennifer McWilliam, (Sears' Buyer of Sterling Silver and Watches and GII's Point of Contact at Sears) requiring GII to provide its response to Skagen's infringement accusations.  Upon information and belief, news of these objectively baseless accusations had already reached the Vice President level at Sears. Ms. McWilliam's e-mail is attached hereto as Ex. O.

45.     Upon information and belief, Skagen's accusations concerning its Alleged Trade Dress and the '947 Patent were similarly disseminated to the upper-management of at least Kohl's and J.C. Penney.

46.     Skagen's actions, as described herein, have resulted in a substantial loss to GII's ability to do business with Sears, Kohl's, and J.C. Penney.

47.     Because of Skagen's actions, J.C. Penney has refused to communicate with Genender concerning the HAMLIN watches or any GII watches until Skagen's claims have been resolved.

48.     Kohl's was communicating with Genender and considering a purchase of Genender's line of HAMLIN watches.  Kohl's had further requested permission to market the HAMLIN watches on Kohl's website.  Kohl's abruptly reversed their position for "competitive reasons", upon information and belief, immediately after being contacted by Skagen concerning the dispute underlying this action.

49.     In making these objectively baseless claims against GII to Sears, Kohl's, and J.C. Penney, Skagen intended to harm, and has, in fact, irreparably harmed the GII's business reputation and caused GII to lose actual and potential sales and goodwill with its customers.

50.     Skagen similarly has used pretrial discovery procedures (Federal Rules of Civil Procedure) in this action and in a mirror action that had been filed in the District of Nevada (and

has now been transferred to this District) to issue meritless, oppressive subpoenas to GII's current and prospective customers, including Kohl's, J.C. Penney, Sears, Kmart, Wal-Mart, Target, Meijer and Stein Mart, and to seek to add Sears as a defendant in the Nevada action. Neither Wal-Mart, Target, nor Stein Mart was ever identified by GII as having any information relevant to Skagen's infringement allegations or as to the HAMLIN watch line. Upon information and belief, the actual purpose of these subpoenas and the addition of Sears as a party was to poison GII's market for the HAMLIN line by broadcasting to these actual and prospective GII customers that the HAMLIN line was the subject of litigation and to harass them from doing business as to other product lines unrelated to the HAMLIN line.

51.     GII has no adequate remedy at law because Skagen's conduct has impaired and continues to impair GII's relationship with its existing and prospective customers and has damaged GII's ability to do business with those customers. GII may lose other valuable business opportunities as a direct and proximate result of Skagen's unlawful acts.

52.     GII has no adequate remedy at law because Skagen's conduct has impaired and continues to impair GII's ability to do business with other customers for the HAMLIN watches which Skagen accuses due to the likelihood Skagen will repeat its actions taken with respect to Sears, Kohl's, and J.C. Penney in regard to Plaintiff's other customers for such HAMLIN watches.

53.     By reason of the foregoing, GII has suffered, and will continue to suffer, severe irreparable harm for which there is no adequate remedy at law.

54.     GII is entitled to preliminary and permanent injunctions against Skagen to restrain and enjoin Skagen and its agents and acting in concert and participation with them from further tortiously interfering with the GII's business relationships.

55.     By reason of the foregoing, GII is entitled to an award of damages from Skagen in an amount to be determined at trial.

56.     Skagen's aforesaid acts are of such wanton, willful and malicious nature that GII is entitled to an award of punitive damages in an amount to be determined at trial in order to punish Skagen and deter others similarly situated from committing such acts in the future.

## COUNT VI
*(False Designations of Origin)*

57.     This is a claim for False Designations of Origin pursuant to § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(a).

58.     The allegations in paragraphs 6-22 are realleged and reincorporated by reference as if fully set for herein.

59.     Skagen markets wristwatches which on the face or dial of the watches, watch backs and watchbands include the words SKAGEN Denmark leading consumers to believe that watches, the watch movements, and/or watch components thereof bearing such designations come from or originate in Denmark, when in fact they do not.  See Exhibit P for an example of a Skagen watch bearing these markings ("SKAGEN Watch").

60.     Skagen has introduced a line of wristwatches which on the face or dial of the watches, watch case backs and watchbands include the words GRENEN Denmark leading consumers to believe that watches, the watch movements, and/or watch components thereof bearing such designation come from or originate in Denmark, when in fact they do not. See Exhibit Q for an example of a Skagen watch bearing these markings ("GRENEN Denmark").

61.     Denmark is a country in Europe.

62.     Grenen is a locality in Denmark.

63.     Grenen is not a word in the English language or a word that is typically used in the United States.

64.     Upon information and belief, watches being offered by and delivered by Skagen are assembled and manufactured in China, with movements being made in Switzerland, Japan, or other foreign country, but not in Denmark.

65.     Under the Tariff Act, 19 U.S.C. § 1304, every article of foreign origin entering the United States must be legibly marked with the English name of the country of origin unless there is an exception from marking provided for in the law.  The purpose of marking is to inform the ultimate purchaser in the United States of the country in which the imported article was made.

66.     Upon information and belief, under 19 U.S.C. § 1304, as interpreted by the U.S. Customs Service, the country of origin of the movement of the watch determines the country of origin of the watch or clock.  Although the additions of the hands, dial, or case add definition to the timepiece, they do not substantially change the character or use of the watch movement, which is the essence of the watch. Accordingly, a watch with one country of origin for the movement, another for the case, and another for the battery, is considered, for purposes of 19 U.S.C. § 1304, to be a product of the country in which the movement was produced.

67.     Upon information and belief, under 19 U.S.C. § 1304, as interpreted by the U.S. Customs Service, the movement's country of origin should appear conspicuously and legibly on the dial face or on the outside of the back of the watch or clock.

68.     Upon information and belief, under 19 U.S.C. § 1304, as interpreted by the U.S. Customs Service, where the parts of a movement are from one country, and the parts are assembled into a movement in a second country (the country of origin), the marking on the

watch and clock may identify the country where the parts of the movement are made (in addition to the country of origin of the watch or clock), as long as the marking is in compliance with the requirements of 19 § CFR 134.46.

69.     Upon information and belief, under 19 CFR § 134.46, as interpreted by the U.S. Customs Service, when the name of a place other than the country of origin appears on an imported article or its container, and the non-origin reference may mislead or deceive the ultimate purchaser as to the actual origin of the article, there shall appear, legibly and permanently, in close proximity to such place name, and in at least a comparable size, the name of the country of origin preceded by "Made in," "Product of" or words of similar meaning; i.e. if the parts of the movement are made in Switzerland and the movement is assembled in China, markings such as "Swiss Parts/Made in China," "Swiss Parts/Movement China," "Swiss Parts/China Movement" are acceptable.

70.     Upon information and belief, under 19 U.S.C. § 1304, as interpreted by the U.S. Customs Service, the phrase "Designed In" may also be used in conjunction with country of origin information, for 19 USC § 1304 marking purposes.  The marking "Designed in USA, Made in (Country of Origin)," has been found to be an acceptable marking provided the words "Made In (Country of Origin)" appear in close proximity and in the same size lettering as the words "Designed in USA."

71.     Skagen's marking of the designation SKAGEN Denmark on the SKAGEN Watch dials and watch case backs may mislead or deceive the ultimate purchaser as to the actual origin of the watch.  The actual country of origin does not appear legibly or conspicuously or in close proximity to the SKAGEN Denmark designation that appears significantly larger in size and considerably more significant in placement than the much smaller marking of "Japan

Movement" or like markings on the watch case backs. In some cases the country of origin markings appear on the watch case backs upside down, in very small lettering, buried among other text. Upon information and belief, these markings are designed to mislead the consumer into believing that Denmark is the country of origin of the watch when in fact it is not.

72. Skagen's marking of the designation GRENEN Denmark on GRENEN Watch dials and watch case backs may mislead or deceive the ultimate purchaser as to the actual origin of the watch. The actual country of origin does not appear legibly or in close proximity to the SKAGEN Denmark designation that appears significantly larger in size and considerably more significant in placement than the much smaller marking of "Japan Movement" or like markings on the watch case backs. Upon information and belief, these markings are designed to mislead the consumer into believing that Denmark is the origin of the watch when in fact it is not.

73. Upon information and belief, since at least as early as 2005, no SKAGEN or GRENEN Watches or any components thereof have been manufactured in Denmark.

74. Upon information and belief, under 19 U.S.C. § 1304, as interpreted by the U.S. Customs Service, watchbands (including watch straps) assembled to a watch in the same country where the movement is assembled are substantially transformed and become a product of that country. In such a case, assuming that the country of origin marking of the watch is otherwise conspicuous, legible and permanent, the band is not required to be marked.

75. Skagen marks watchbands on SKAGEN Watches, but with the designation SKAGEN Denmark that is not the country of origin of the watchband. Upon information and belief, Skagen's watch bands do not originate from Japan (or in the country where the movement is assembled) or Denmark. Instead, the bands originate in China where the watches are assembled and exported to the U.S.

76. Skagen also marks watchbands on GRENEN Watches, but with the designation GRENEN Denmark that is not the country of origin of the watchband. Upon information and belief, GRENEN watchbands do not originate from Japan (or in the country where the movement is assembled) or Denmark. Instead, the bands originate in China where the watches are assembled and exported to the U.S.

77. Upon information and belief, Skagen has failed to comply with the rules and regulations of the U.S. Customs Service by (a) marking the designation SKAGEN Denmark on the faces of SKAGEN Watch dials and watch case backs that is not the country of origin of the watch; (b) failing to mark legibly, permanently, conspicuously and/or in close proximity to the non-origin SKAGEN Denmark designation on the watch face the name of the country of origin preceded by "Made in," "Product of" or words of similar meaning; and (c) marking the designation SKAGEN Denmark on the watchband that is not the country of origin of the watch or watchband, all acts of which are designed to mislead or deceive the ultimate purchaser into believing the actual origin of the article being Denmark, when in fact it is not.

78. Upon information and belief, Skagen has failed to comply with the rules and regulations of the U.S. Customs Service by (a) marking the designation GRENEN Denmark on the faces of GRENEN Watch dials and watch case backs that is not the country of origin of the watch; (b) failing to mark legibly, permanently and/or in close proximity to the non-origin GRENEN Denmark designation on the watch face the name of the country of origin preceded by "Made in," "Product of" or words of similar meaning; and (c) marking the designation GRENEN Denmark on the watchband that is not the country of origin of the watch or watchband, each and all acts of which are designed to mislead or deceive the ultimate purchaser into believing the actual origin of the article being Denmark, when in fact it is not.

79. Upon information and belief, since at least as early as 2005, all Skagen watches and all components thereof are assembled in China. Upon information and belief, potential exceptions may exist for certain watches having Swiss or Japanese movements.

80. Not only has Skagen's aforementioned acts caused confusion in the marketplace as to source of origin, but Skagen's acts are also causing damage to GII. Upon information and belief, Skagen has priced the GRENEN Watches bearing the GRENEN Denmark designation at a price level that is competitive with the prices of watches being sold by GII under the trademark HAMLIN.

81. Upon information and belief, Skagen has offered for sale and sold those watches to customers of GII in competition with GII's watches under the trademark HAMLIN.

82. Upon information and belief, GII has lost sales of HAMLIN watches that would have been made, could have been made, and on some occasions were about to be made on account of the competitive watches of Skagen which carry the false origin marks GRENEN Denmark on their faces and watchbands, because those markings imply a false sense of quality (Danish origin) over GII's watches when in fact those watches have a similar country of origin to GII's HAMLIN watches.

83. The foregoing acts and conduct of Skagen violate the Tariff Act, 19 U.S.C.S. § 1304, and as a matter of law, § 43(a) of the Lanham Act, 15 U.S.C.S. § 1125(a)(1)(a).

84. The foregoing acts and conduct of Skagen constitute willful and deliberate false designations of origin and false descriptions and representations of fact in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(a).

85.     By reason of the foregoing, GII has suffered damage that cannot be fully compensated by an award of damages, but only by immediate corrective action to enjoin the false identification of country and place of origin.  Plaintiff has no adequate remedy at law.

## COUNT VII
### (False and Misleading Advertising)

86.     This is a claim for False and Misleading Advertising pursuant to 15 U.S.C. § 1125(a)(1)(b).

87.     The allegations in paragraphs 57-85 are realleged and reincorporated by reference as if fully set for herein.

88.     The foregoing acts and conduct of Skagen in connection with its dissemination of the aforementioned packaging, warrantee, hang tag, consumer brochure, and advertising/ promotion and internet statements and claims constitutes intentional false advertising and false descriptions and representations of fact which are likely to deceive and mislead the purchasing trade and public regarding material characteristics and attributes of SKAGEN Watches and GRENEN Watches and are therefore in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(b).  Upon information and belief, none of these articles properly reference China, or Japan as countries of origin for the watchbands, the packaging and/or the watch.

89.     The foregoing acts and conduct of Skagen constitute false advertising through statements and representations which are literally false and which convey a false impression or are otherwise misleading in context in violation of § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(b).

90.     The foregoing acts and conduct of Skagen constitute willful and deliberate false advertising through statements and representations which are literally false and which convey a

false impression or are otherwise misleading in context in violation of § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(b).

91.     By reason of all the foregoing, GII is being damaged by Skagen's activities in the manner set forth above and will continue to be damaged unless Skagen is enjoined from the aforesaid acts.  GII has no adequate remedy at law.

### COUNT VIII
*(Cancellation of Registration No. 1,908,375)*

92.     This is a claim for cancellation of Skagen's U.S. Registration No. 1,908,375 for the mark SKAGEN DENMARK and design ("the SKAGEN DENMARK mark") pursuant to 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), 43(c) of the Lanham Act, 15 U.S.C. § 1052(e), and § 14(3) of the Lanham Act, 15 U.S.C. § 1064(3).

93.     The allegations in paragraphs 57-91 are realleged and reincorporated by reference as if fully set for herein.

94.     In view of the foregoing, the SKAGEN DENMARK mark is likely to cause confusion as to the geographic origin of Skagen's goods and is therefore in violation of 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

95.     In view of the foregoing, the SKAGEN DENMARK mark is likely to cause confusion as to the geographic origin of Skagen's goods and is therefore in violation of 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

96.     In view of the foregoing, Skagen's U.S. Registration No. 1,908,375 is geographically deceptively misdescriptive of Skagen's goods and is therefore in violation of 43(c) of the Lanham Act, 15 U.S.C. § 1052(e).

97.     Upon information and belief, in obtaining U.S. Registration 1,908,375, and/or in post-registration filings, Skagen withheld from the U.S. Patent and Trademark Office the true

country of origin, and in particular, the fact that the trademark was geographically deceptively misdescriptive. Had the Examiner known the facts, he/she should have and likely would have refused to grant the Registration.

98. In view of the foregoing, Skagen's U.S. Registration No. 1,908,375 was secured and/or maintained through the commission by Skagen of fraud on the United States Patent and Trademark office and is therefore in violation of §14(3) of the Lanham Act, 15 U.S.C. §1064(3).

99. In view of the foregoing, the Court, pursuant to its power to rectify the U.S. trademark register pursuant to §37 of the Lanham Act, 15 U.S.C. §1119, should cancel and expunge U.S. Registration No. 1,908,375 from the registration records of the U.S. Patent and Trademark Office.

100. By reason of the foregoing acts, Skagen is seeking to enforce equitable rights with unclean hands and its claims for relief should be refused for its inequitable conduct.

**COUNT IX**
*(Deceptive Trade Practices in Violation of Illinois law)*

101. This is a claim for violation of the Illinois Uniform Deceptive Trade Practices Act, 815 Ill. Compiled Stat. §§ 510/1 *et seq.*

102. The allegations in paragraphs 57-100 are realleged and reincorporated by reference as if fully set for herein.

103. The foregoing acts and conduct of Skagen constitute a willful, deliberate, and deceptive trade practice in that deceptive representations as to the origin of the goods were made in connection with the sale of Skagen watches in Illinois in violation of the Illinois Uniform Deceptive Trade Practices Act, 815 Ill. Compiled Stat. §§ 510/1 *et seq.*

**WHEREFORE**, Plaintiff Genender prays that a judgment be entered declaring:

A. that Plaintiff has not infringed the Patent-in-Suit;

B.    that the Patent-in-Suit is invalid under one or more of the provisions of 35 U.S.C.

§§102, 103, 112 and/or 171;

C.    that Plaintiff has not infringed Skagen's Alleged Trade Dress;

D.    that Skagen's Alleged Trade Dress is functional, generic, and/or lacks requisite

secondary meaning and is therefore invalid and/or unprotectable;

E.    that the Court render judgment in favor of Plaintiff on its claims of unfair

competition and interference with existing and potential business relationships and

misrepresentation of origin leading to loss of business and good will and award just damages and

injunctive relief against said unfair competition;

F.    an Order preliminarily and permanently enjoining and restraining Skagen from

using the words "Denmark" or "Grenen" or any other product markings, labels, or statements

which are likely to mislead or deceive persons into believing that Skagen's watches originate or

are otherwise associated with a country of non-origin in connection with the advertising,

promotion, offering for sale, sale and/or distribution of watches;

G.    an Order canceling Skagen's U.S. Registration No. 1,908,375 from the trademark

register of the U.S. Patent and Trademark Office;

H.    an Order prohibiting Skagen from seeking relief against GII on account of

Skagen's unclean hands in the Patent and Trademark Office and before this Court;

I.    that Plaintiff be awarded its costs and its attorneys' fees on account of Skagen's

objectively baseless allegations against Plaintiff's HAMLIN watches; and

J.      that GII be granted such other and further relief as the Court may deem just and proper.

Respectfully submitted,

GENENDER INTERNATIONAL INC.


Dated:  May 14, 2008                      __/s/ Christopher J. McGeehan_____
                                       Paul G. Juettner, Esq. (#6180920)
Christopher J. McGeehan (#6279619)
Greer, Burns & Crain, Ltd.
300 S. Wacker Dr., Suite 2500
Chicago, IL 60606-6501
(312) 360-0080

Robert C. Faber, Esq. (admitted *pro hac vice*)
Douglas A. Miro, Esq. (admitted *pro hac vice*)
Cameron S. Reuber (admitted *pro hac vice*)
Art C. Cody, Esq. (admitted *pro hac vice*)
Ostrolenk, Faber, Gerb & Soffen, LLP
1180 Avenue of the Americas
New York, NY 10036
Phone: 212-382-0700

Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

It is hereby certified that a true copy of **FIRST AMENDED COMPLAINT FOR DECLARATORY JUDGMENT OF PATENT AND TRADE DRESS NON-INFRINGEMENT AND INVALIDITY, AND RELATED CAUSES** is being served on this 14th day of May 2008 upon counsel for Defendant Skagen Design Ltd. via the Case Management / Electronic Case Filing (CM/ECF) System of the U.S. District Court for the Northern District of Illinois pursuant to L.R. 5.9:

> Patrick J. Arnold, Jr.
> McAndrews, Held & Malloy, P.C.
> 500 West Madison Street
> Suite 3400
> Chicago, IL 60661
> (312) 775-8000
> Email: parnold@mhmlaw.com
>
> Sarah Anne Kofflin
> McAndrews, Held & Malloy, Ltd.
> 500 West Madison Street
> 34th Floor
> Chicago, IL 60661
> (312)775-8213
> Email: skofflin@mcandrews-ip.com

_____ /s/ Christopher J. McGeehan _____